Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@finkelsteinthompson.com
Quentin A. Roberts (State Bar No. 306687)
Email: qroberts@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
1 California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

*Attorneys for Individual and Representative
Plaintiff Tina Lee*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tina Lee, on behalf of herself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>Yahoo! Inc.,<br><br>　　　　　　Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tina Lee ("Plaintiff"), on behalf of herself and the proposed Class defined herein, bring this class action suit against Defendant Yahoo! ("Yahoo" or "Defendant"). In support of this Class Action Complaint, Plaintiff alleges, based on her personal knowledge and the investigation of her counsel, as follows:

## NATURE OF THE ACTION

1.      Defendant Yahoo offers online services to millions people worldwide, including Yahoo! Mail, a free email service (with premium options). Yahoo! Mail was launched in 1997, and is one of the oldest and largest web-based email services available. Among other things, Yahoo! Mail includes email, calendar, contacts, note taking, and Yahoo Messenger integration. Yahoo reportedly has over 500 million Yahoo Mail! users, including 81 million in the United States alone.

2.      To create an email account with Yahoo, a user must provide his or her name, a secondary email address, telephone number, birth date, a password, and answers to security questions. Thus, Yahoo collects, stores and maintains a significant amount of personal information regarding its users. This is in addition to any personal or financial information that users may send through their Yahoo! Mail accounts to other persons. Yahoo! Mail users have built their digital identities around their email accounts with Yahoo, from their bank accounts, photo albums to medical information.

3.      Yahoo promised and represented to users that it "take[s] your privacy seriously," to "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs," and to "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you[.]" Yahoo, however, failed to do this.

4.      On September 22, 2016, Yahoo announced that a "recent investigation" showed that "state-sponsored" hackers accessed its network in late 2014 and stole the personal data on over 500 million users. The stolen information includes users' names, email addresses, telephone numbers, dates of birth, scrambled passwords, and in some cases, encrypted or unencrypted security questions and answers used to verify an accountholder's identity ("Personal Information"). While Yahoo says the stolen passwords were encrypted, computer-security experts have opined that a hacker could unscramble the passwords using commonly available "cracking" software. Moreover, once a password is "cracked",

CLASS ACTION COMPLAINT
CASE NO.

hackers can break into Yahoo! Mail accounts and if the password happened to be the same on other banking, retail or financial website accounts, hackers could gain access to those accounts as well.

5.     Due to Defendant's failure to implement and maintain basic data security protocols in accordance with industry standards, and contrary to Yahoo's representations, its users' Personal Information is now in the hands of criminals and/or enemies of the Unites States, subjecting Plaintiff and the Class (as defined below) to the serious risk of identity theft in a wide variety of forms.

6.     Yahoo was so grossly negligent in securing its users' Personal Information. Initially, Yahoo claimed that it did not even discover the incident until the summer of 2016. However, in a recent filing with the Security Exchange Commission, Yahoo revealed that it knew in 2014 that it had been hacked.

7.     Yahoo clearly had knowledge of the breach long before it was disclosed in September 2016, but concealed it from the public until after the announcement of a $4.8 billion sale of the Company to Verizon in July 2016. Specifically, Yahoo stated in part: "An Independent Committee of the Board, advised by independent counsel and a forensic expert, is investigating, among other things, the scope of knowledge within the Company in 2014 and thereafter regarding this access, the Security Incident, the extent to which certain users' account information had been accessed, the Company's security measures, and related incidents and issues."

8.     Plaintiff and Class members must now protect themselves from fraud and identity theft. While the Company has reiterated that the "ongoing investigation" suggests that the stolen information did not include payment card data or bank account information,[1] Yahoo has nevertheless encouraged its users to consider placing a "security freeze" (also known as a "credit freeze") on their credit file. A security freeze is designed to prevent potential creditors from accessing an individual's credit file at the consumer reporting agencies without the individual's consent, and, according to Yahoo's notice to its users, costs roughly between $5 and $20 per freeze. Yahoo has offered no financial assistance to its users.

---

[1] https://investor.yahoo.net/ReleaseDetail.cfm?releaseid=990570

CLASS ACTION COMPLAINT
CASE NO.

9.      Additionally, a number of Yahoo users are reporting that the company or its authorized technicians are demanding payment of several hundred dollars for 1-3 years of "security protection" in order to access their hacked, blocked accounts.

10.      Plaintiff brings this class action lawsuit against Yahoo for failing to adequately safeguard her personal information and that of the proposed Class. Plaintiff seeks an order requiring Yahoo to remedy the harm caused by its misconduct, including compensation to Plaintiff and Class members for resulting account fraud and for all reasonably necessary measures Plaintiff and Class members have had to take in order to identify and safeguard the accounts put at risk by Yahoo's grossly negligent security. Plaintiff further seeks a declaratory judgment declaring unenforceable the limitation of liability clause in Yahoo's Terms of Service.

## THE PARTIES

11.      Plaintiff Tina Lee is a citizen and resident of California.

12.      Defendant Yahoo Inc. is a corporation incorporated in Delaware with headquarters at 701 First Avenue, Sunnyvale, California.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Class exceeds 100; and hundreds of thousands of Class members are citizens of different states than Defendant.

14.      This Court has *in personam* jurisdiction over Defendant because Defendant is present and licensed to do business in this Judicial District, regularly conducts business in this Judicial District, and/or has extensive contacts with this forum.

15.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendant transacts substantial business in this District and resides in this District.

16.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

CLASS ACTION COMPLAINT
CASE NO.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**APPLICATION OF CALIFORNIA LAW**

17.     Application of California law to the claims of the proposed Class, as defined below, is appropriate in this case.

18.     Yahoo maintains its headquarters in Sunnyvale, California.  Moreover, Yahoo's Terms of Service contains a Choice of Law and Forum provision stating that the "the relationship between the parties shall be governed by the laws of the State of California" and any claims "shall be brought exclusively in the courts located in the county of Santa Clara, California or the U.S. District Court for the Northern District of California."

**FACTUAL ALLEGATIONS**

**Background**

19.     Yahoo is an American multinational technology company founded in 1994 that is globally known for its Web portal, Yahoo! search engine and related services, such as Yahoo! Mail, Yahoo! News, and Yahoo! Finance, among others.

20.     Yahoo has had a number of security problems with its Yahoo! Mail service. Around 2012, a hacker sold an exploit of Yahoo! Mail for $700 that allowed hijackers to hack Yahoo! Mail accounts and redirect users to a malicious website. The attack utilized cross-site scripting allowing hackers to steal cookies. In July 2012, a group of hackers based in Eastern Europe breached Yahoo's security measures and extracted e-mail addresses and passwords that were stored unencrypted within a Yahoo database. The hackers then posted these login credentials online, exposing Yahoo's lax security measures.

21.     Yahoo represents and guarantees to its users that it will take certain security steps to protect personal and private information. Specifically, Yahoo promises on its website and in its Privacy Policy: to "take[] your privacy seriously"; to "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs"; and to "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you."

CLASS ACTION COMPLAINT
CASE NO.

**The 2014 Security Breach**

22.     In September 2016, Yahoo initially claimed that it first learned of a potentially massive data breach during the summer of 2016, when hackers posted to underground online forums certain data that they claimed was obtained from Yahoo. Yahoo launched an investigation, but initially said that it was unable to confirm whether the stolen data had originated from a breach at Yahoo.

23.     While the Company claims that it did not find evidence that the stolen data came from its own systems, it did find evidence of a far more serious breach: according to Yahoo, in 2014, a state-sponsored actor stole account information associated with approximately 500 million Yahoo users.

24.     On September 22, 2016, Yahoo issued a press release announcing that its internal investigation had confirmed that account information associated with at least 500 million user accounts had been stolen.

25.     The press release stated, in part, as follows: A recent investigation by Yahoo! Inc. (NASDAQ:YHOO) has confirmed that a copy of certain user account information was stolen from the company's network in late 2014 by what it believes is a state-sponsored actor. The account information may have included names, email addresses, telephone numbers, dates of birth, hashed passwords (the vast majority with bcrypt) and, in some cases, encrypted or unencrypted security questions and answers. The ongoing investigation suggests that stolen information did not include unprotected passwords, payment card data, or bank account information; payment card data and bank account information are not stored in the system that the investigation has found to be affected. Based on the ongoing investigation, Yahoo believes that information associated with at least 500 million user accounts was stolen and the investigation has found no evidence that the state-sponsored actor is currently in Yahoo's network. Yahoo is working closely with law enforcement on this matter.

26.     The press release also stated: "Yahoo is notifying potentially affected users and has taken steps to secure their accounts. These steps include invalidating unencrypted security questions and answers so that they cannot be used to access an account and asking potentially affected users to change their passwords. Yahoo is also recommending that users who haven't changed their passwords since 2014 do so."

CLASS ACTION COMPLAINT
CASE NO.

27.     Yahoo further encouraged "users to review their online accounts for suspicious activity and to change their password and security questions and answers for any other accounts on which they use the same or similar information used for their Yahoo account. The company further recommends that users avoid clicking on links or downloading attachments from suspicious emails and that they be cautious of unsolicited communications that ask for personal information. Additionally, Yahoo asks users to consider using Yahoo Account Key, a simple authentication tool that eliminates the need to use a password altogether."

28.     According to Yahoo, "Online intrusions and thefts by state-sponsored actors have become increasingly common across the technology industry. Yahoo and other companies have launched programs to detect and notify users when a company strongly suspects that a state-sponsored actor has Yahooed an account. Since the inception of Yahoo's program in December 2015, independent of the recent investigation, approximately 10,000 users have received such a notice."

29.     The New York Times published an article on September 22, 2016, titled "Yahoo Says Hackers Stole Data on 500 Million Users in 2014," which quoted security experts who explained that the Yahoo data breach could have major consequences: "The stolen Yahoo data is critical because it not only leads to a single system but to users' connections to their banks, social media profiles, other financial services and users' friends and family," said Alex Holden, the founder of Hold Security, which has been tracking the flow of stolen Yahoo credentials on the underground web. "This is one of the biggest breaches of people's privacy and very far-reaching."  Other reports opined that Yahoo's data breach was the largest data breach from a single site in history.

30.     The Yahoo data breach underscores that the Company has, by acting with reckless disregard for the security of its users' personal information that it promised to protect, completely failed to implement reasonable security measures designed to protect its users' sensitive personal information, despite the Company being the target of data breaches in the past and being one of the largest Internet services company.

CLASS ACTION COMPLAINT
CASE NO.

31.     To make matters worse, Yahoo misrepresented it its users and the public that it did not learn about the 2014 data breach until the summer of 2016, when in reality, Yahoo knew about the data breach in 2014 but did not notify users or the public until September 22, 2016.

32.     As a result of Defendant's reckless conduct and failure to establish and implement basic data security protocols, despite its knowledge and the warnings of prior data breaches, its users' personal information is now in the hands of criminals, subjecting Plaintiff and the Class to the serious risk of identity theft in a wide variety of forms.

### Yahoo Recommends that Users Take Security Steps to Protect Themselves

33.     Yahoo's September 22, 2016 press release announcing the attack also provided a link to a Yahoo Account Security Notice.

34.     The link embedded in the press release directed Yahoo! Mail account users to a page detailing Account Security Issues Frequently Asked Questions ("FAQs"). The FAQs provided additional factual background on the data breach and offered suggestions on how Yahoo users could secure their account.

35.     Yahoo instructed users to place a "security freeze" (also known as a "credit freeze") on their credit files. A security freeze is designed to prevent potential creditors from accessing an individual's credit file at the consumer reporting agencies without the individual's consent, and costs roughly between $5 and $20 per freeze. Yahoo provided instructions on how to implement a security freeze and provided additional details on what the security-freeze process entails, but offered no financial assistance.

36.     According to the Better Business Bureau, "Hackers are constantly looking for your information, whether that be something like names, emails, dates of birth and addresses like what was compromised in the Yahoo breach, or worse, information including your Social Security number or banking information," BBB's Emily Valla said. The Better Business Bureau suggests that victims of Yahoo's data breach check their credit reports and financial statements regularly.

37.     Plaintiff will be required to expend money as a direct result of the data breach to protect herself from identity theft. Plaintiff, and other Class members who do the same, should be compensated

7

by Yahoo for their expenses in light of Yahoo's failure to adequately secure its users' personal information.

**Plaintiff's Experience**

38.     Plaintiff Lee has used a Yahoo! Mail account for several years.  To obtain her Yahoo! Mail account, Plaintiff had to provide Yahoo with her personal information, which she believed would be secure and protected based on Yahoo's privacy policy, which she reviewed.

39.     Sometime in the summer of 2016, Plaintiff received an email from Yahoo notifying her that someone had tried to gain access to her Yahoo! Mail account.

40.     Then, on September 22, 2016, Plaintiff received another email from Yahoo, this time from its Chief Information Security Officer, Bob Lord, notifying Plaintiff about a "data security issue". The email provided Plaintiff with the following security recommendations:

- Change your password and security questions for any other accounts on which you used the same or similar information used for your Yahoo account.

- Review your accounts for suspicious activity.

- Be cautious of unsolicited communications that ask for your personal information or refer you to a web page asking for personal information.

- Avoid clicking on links or downloading attachments from suspicious emails.

    The email also directed Plaintiff to visit the Yahoo Security Issue FAQs page available at https://yahoo.com/security-update.

41.     Since the first data breach back in 2012, followed by the second data breach in 2014 disclosed in 2016, Plaintiff has been an active Yahoo user and has sent many emails through her compromised Yahoo! Mail account that has contained personal information, financial information, and photos that she intended to be strictly private.

**CLASS ACTION ALLEGATIONS**

42.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of herself and a nationwide class of similarly situated individuals, initially defined as follows:

CLASS ACTION COMPLAINT
CASE NO.

All persons in the United States whose information was compromised as a result of the cyber-attack on Yahoo that was announced on or around September 22, 2016.

Plaintiff reserves her right to seek modification of the class definition based on discovery taken in the matter. Excluded from the Class is Defendant; any person who is an officer, director, partner or controlling person of Defendant, including any of its subsidiaries or affiliates; any entity in which Defendant has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded person or entity. Also excluded are the judges and court personnel in this case and any members of their immediate families.

43.     All members of the proposed Class are readily ascertainable. Defendant has access to addresses and other contact information for millions of members of the Class, which can be used for providing notice to many Class members.

44.     This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2) or (3) and Rule 23(c)(4) of the Federal Rules of Civil Procedure and case law thereunder.

### Numerosity of the Class

### (Fed. R. Civ. P. 23(a)(1))

45.     Yahoo has stated publicly that approximately 500 million of its users were affected by this data breach, and according to public records there were millions of Yahoo users in the United States during 2014 when the breach occurred. Joinder is therefore impracticable and the numerosity requirement of Rule 23 is easily satisfied here.

### Commonality and Predominance

### (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

46.     Plaintiff's and Class members' claims raise predominately common factual and legal questions that can be answered for all Class members through a single class-wide proceeding. For example, to resolve any Class member's claims, it will be necessary to answer the following questions, and the answer to each of these questions will necessarily be the same for each Class member.

CLASS ACTION COMPLAINT
CASE NO.

(a)     Whether Yahoo owed a duty of care to Plaintiff and Class members regarding the security of their Personal Information;

(b)     Whether Yahoo was negligent in safeguarding Plaintiff's and Class members' Personal Information;

(c)     Whether Yahoo's conduct was reckless or intentional;

(d)     Whether Yahoo breached its contract with Plaintiff and Class members;

(e)     Whether Yahoo violated California law by failing to timely disclose the data breach to California residents; and

(f)     Whether Plaintiff and Class members are entitled to damages, declaratory and/or injunctive relief.

### Typicality

### (Fed. R. Civ. P. 23(a)(3))

47.     Plaintiff's claims are typical of the claims of the members of the Class. Among other things, Plaintiff and Class members provided Personal Information that was stored on Defendant's systems because they are users of Yahoo's services. In addition, Plaintiff's claims are typical of Class members' claims as each arises from the same data breach and the same alleged reckless conduct on the part of Yahoo in handling the Class members' personal information.

### Adequacy of Representation

### (Fed. R. Civ. P. 23(a)(4))

48.     Plaintiff will adequately represent the proposed Class members. Plaintiff has retained counsel competent and experienced in class action and privacy litigation and intends to pursue this action vigorously. Plaintiff has no interests contrary to or in conflict with the interests of Class members.

### Superiority of a Class Action

### (Fed. R. Civ. P. 23(b)(3))

49.     A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiff and Class members.

CLASS ACTION COMPLAINT
CASE NO.

50.     Plaintiff and Class members have been harmed by Defendant's wrongful actions and inaction. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's wrongful actions and inaction.

51.     A class action is an appropriate method for the fair and efficient adjudication of this controversy. There is no special interest in the members of the Class individually controlling the prosecution of separate actions. The loss of money and other harm sustained by many individual Class members will not be large enough to justify individual actions, especially in proportion to the significant costs and expenses necessary to prosecute this action. The expense and burden of individual litigation makes it impossible for many members of the Class individually to address the wrongs done to them. Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against Defendant. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore, Defendant transacts substantial business in and perpetuated its unlawful conduct in California. Defendant will not be prejudiced or inconvenienced by the maintenance of this class action in this forum. Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(a) and (b)(3). The above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## Risk of Inconsistent or Dispositive Adjudications and the
## Appropriateness of Final Injunctive or Declaratory Relief
### (Fed. R. Civ. P. 23(b)(1) and (2))

52.     In the alternative, this action may properly be maintained as a class action, because:

CLASS ACTION COMPLAINT
CASE NO.

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

### Issue Certification

### (Fed. R. Civ. P 23(c)(4))

53.     In the alternative, the common questions of fact and law, set forth above, are appropriate for issue certification on behalf of the Class.

## FIRST CAUSE OF ACTION

### Negligence

54.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim on behalf of herself and all Class members.

55.     Defendant requested and came into possession of Plaintiff's and Class members' Personal Information, and had a duty to exercise reasonable care in safeguarding and protecting such information from being accessed. Defendant's duty arose from, among other things, its representations and promises with its customers and the legal requirements and its relationship with its customers.

56.     Defendant has a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class members' Personal Information. The breach of security, unauthorized access, and resulting injury to Plaintiff's and the Class were reasonably foreseeable, particularly in light of its inadequate data security system and failure to encrypt the data.

57.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiff's and Class members' Personal Information within Defendant's control.

58.     Defendant, through its actions and/or omissions, breached its duty to Plaintiff and Class members by failing to have procedures in place to detect and prevent access to Plaintiff's and Class members' Personal Information by unauthorized persons.

59.     But for Defendant's breach of its duties, Plaintiff's and Class members' Personal Information would not have been compromised.

60.     Plaintiff's and Class members' Personal Information was stolen and accessed as the proximate result of Defendant failing to exercise reasonable care in safeguarding such information by adopting, implementing, or maintaining appropriate security measures and encryption.

61.     As a result of Defendant's conduct, Plaintiff and Class members are at a significant increased risk of identity theft.  Plaintiff and Class members suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring, black market website surveillance, public record scanning, credit freezes, and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; and time spent initiating fraud alerts.

## SECOND CAUSE OF ACTION

### Bailment

62.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim on behalf of herself and all Class members.

63.     Plaintiff and members of the Class delivered their Personal Information to Yahoo for the exclusive purpose of creating a Yahoo account.

64.     In providing their personal and financial information to Yahoo, Plaintiff and Class members intended and understood that Yahoo would adequately safeguard their Personal Information.

65.     Yahoo accepted possession of Plaintiff's and Class members' Personal Information for the purpose of creating a Yahoo user account.

13

66.     By accepting possession of Plaintiff's and Class members' Personal Information, Yahoo understood that Plaintiff and Class members expected Yahoo to adequately safeguard their Personal Information. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

67.     During the bailment (or deposit), Yahoo owed a duty to Plaintiff and Class members to exercise reasonable care, diligence and prudence in protecting their Personal Information.

68.     Yahoo breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiff's and Class members' Personal Information, resulting in the unlawful and unauthorized access to and misuse of their Personal Information.

69.     Yahoo further breached its duty to safeguard Plaintiff's and Class members' Personal Information by failing to timely and accurately notify them that their information had been compromised as a result of the Yahoo data breach.

70.     As a direct and proximate result of Yahoo's breach of its duty, Plaintiff and Class members suffered consequential damages that were reasonably foreseeable to Yahoo, including but not limited to the damages set forth herein.

71.     As a direct and proximate result of Yahoo's breach of its duty, the personal information of Plaintiff and Class members entrusted to Yahoo during the bailment (or deposit) was damaged and its value diminished.

**THIRD CAUSE OF ACTION**

**Breach of Implied Contract**

72.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim on behalf of herself and all Class members.

73.     At the time Plaintiff and members of the Class provided their Personal Information to Yahoo in order to create an account, Plaintiff and members of the Class entered into implied contracts with Yahoo pursuant to which Yahoo agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class members that their data had been breached and compromised.

74.     Yahoo actively solicited and invited Plaintiff and Class members to create Yahoo! Mail accounts and required them to provide personal and private information. Plaintiff and Class members

CLASS ACTION COMPLAINT
CASE NO.

accepted Yahoo's offer and obtained Yahoo! Mail accounts that were active and in-use during the period of the Yahoo data breach.

75.     The provision of Personal Information to Yahoo by Plaintiff and Class members was made pursuant to the mutually agreed upon implied contract with Yahoo under which the Company agreed to safeguard and protect Plaintiff's and Class members' Personal Information, and to timely and accurately notify them that such information was compromised and breached.

76.     Plaintiff and Class members would not have provided and entrusted their Personal Information to Yahoo in order to open a Yahoo account in the absence of the implied contract between them and Yahoo.

77.     Plaintiff and Class members fully performed their obligations under the implied contract with Yahoo.

78.     Yahoo breached the implied contracts it made with Plaintiff and Class members by failing to safeguard and protect the Personal Information of Plaintiff and Class members and by failing to provide timely and accurate notice to them that their Personal Information was compromised in and as a result of the Yahoo data breach.

79.     The losses and damages sustained by Plaintiff and Class members as described above were the direct and approximate result of Yahoo's breaches of the implied contracts between Yahoo and Plaintiff and Class members.

**FOURTH CAUSE OF ACTION**

**Breach of Express Contract**

80.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim on behalf of herself and all Class members.

81.     Every Yahoo! Mail account is governed by Yahoo's Terms of Service, which incorporates its Privacy Policy into the terms of the Terms of Service. As a condition of opening a Yahoo! Mail account, Plaintiff and Class members are subject to the terms of the Terms of Service and the Privacy Policy incorporated therein.

CLASS ACTION COMPLAINT
CASE NO.

82.     The Terms of Service say: "Registration Data and certain other information about you are subject to our applicable privacy policy."

83.     The Privacy Policy states that Yahoo will:

•       "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs"; and "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you."

84.     Plaintiff and Class members were made subject to the uniform, common terms of the above agreements and documents.

85.     Plaintiff and Class members fully performed their obligations under the above agreements and documents.

86.     Yahoo breached the Terms of Service and Privacy Policy. Contrary to the terms of the agreements, and by engaging in the conduct set forth in this Complaint, Yahoo did not protect its customers' personal information from unauthorized access and use and Yahoo did not use measures, including computer safeguards and secured files and buildings, to protect Plaintiff's and Class members' personal information from unauthorized access and use.

87.     Plaintiff and Class members had active Yahoo! Mail accounts during the period of the Yahoo data breach. Their Yahoo accounts were compromised in and as a result of the Yahoo data breach. Plaintiff and members of the Class suffered damages and losses as described herein.

88.     The damages and losses sustained by Plaintiff and members of the Class are the direct and proximate result of Yahoo's breaches of the Terms of Service and Privacy Policy.

## FIFITH CAUSE OF ACTION

### Violation of California's Unfair Competition Law

### Cal. Bus. & Prof. Code §17200, *et seq.*

89.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim on behalf of herself and all Class members.

CLASS ACTION COMPLAINT
CASE NO.

90.     Defendant has engaged in unlawful, unfair, and fraudulent business practices within the meaning of California Business & Professions Code § 17200, *et seq.* by virtue of the misconduct alleged herein.  As a result of Defendant's actions and omissions, Plaintiff has suffered injury-in-fact and has lost money or property.

91.     Defendant's unlawful and unfair practices include the violation of California's Customer Records Act Cal. Civ. Code §1798.80, *et seq.*

92.     Defendant's business practices are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and or substantially injurious to Plaintiff and the proposed Class members.  The justification for Defendant's conduct is outweighed by the gravity of the consequences to Plaintiff and Class members.  Defendant can provide no adequate justification for its failure to employ adequate precautions to protect the Personal Information of Plaintiff and proposed Class members.  Indeed, any costs Defendant would have incurred to, among other things, implement and maintain reasonable security procedures and practices to protect Plaintiff's and Class members' Personal Information were outweighed by the harm to Plaintiff and Class members. Defendant's conduct undermines and violates the stated spirit and policies underlying California's Customer Records Act Cal. Civ. Code §1798.80, *et seq.*, as alleged herein.

93.     Defendant's business practices are also fraudulent.  Defendant's practices were deceptive and misleading. Defendant failed to disclose material information, namely, (a) that it did not implement proper and reasonable procedures in compliance with state law for the protection of Personal Information and (b) the compromise of Plaintiff's and Class members' Personal Information in 2014. Plaintiff relied on Defendant's representations and material omissions. Defendant's practices were likely to deceive reasonable consumers.  Defendant's practices resulted in a loss of money and/or property.

94.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks equitable and injunctive elief on behalf of herself and the proposed Class as set forth herein, including an order requiring Defendant to comply with state law regarding data security.

## SIXTH CAUSE OF ACTION

### Violation of California's Customer Records Act

**Cal. Civ. Code §1798.80,** *et seq.*

95.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim on behalf of herself and all Class members residing in California.

96.     Section 1798.82 of the California Civil Code provides, in pertinent part, as follows:

(a)     Any person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

(b)     Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

(c)     The notification required by this section may be delayed if a law enforcement agency determines that the notification will impede a criminal investigation. The notification required by this section shall be made after the law enforcement agency determines that it will not compromise the investigation.

(d)     Any person or business that is required to issue a security breach notification pursuant to this section shall meet all of the following requirements:

(1)     The security breach notification shall be written in plain language.

(2)     The security breach notification shall include, at a minimum, the following information:

(A)     The name and contact information of the reporting person or business subject to this section.

18

CLASS ACTION COMPLAINT
CASE NO.

(B)     A list of the types of personal information that were or are reasonably believed to have been the subject of a breach.

(C)     If the information is possible to determine at the time the notice is provided, then any of the following: (i) the date of the breach, (ii) the estimated date of the breach, or (iii) the date range within which the breach occurred. The notification shall also include the date of the notice.

(D)     Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided.

(E)     A general description of the breach incident, if that information is possible to determine at the time the notice is provided.

(F)     The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number.

97.     The Yahoo data breach constituted a "breach of the security system" of Yahoo.

98.     Yahoo unreasonably delayed informing anyone about the breach of security of California Class members' confidential and non-public information after Yahoo knew the data breach had occurred in 2014.

99.     Yahoo failed to disclose to California Class members, without unreasonable delay, and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, personal information when it knew or reasonably believed such information had been compromised.

100.    Based on information and belief, no law enforcement agency instructed Yahoo that notification to California Class members would impede investigation.

101.    Pursuant to Section 1798.84 of the California Civil Code:

(a)     Any waiver of a provision of this title is contrary to public policy and is void and unenforceable.

CLASS ACTION COMPLAINT
CASE NO.

(b)    Any customer injured by a violation of this title may institute a civil action to recover damages.

(c)    In addition, for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty not to exceed three thousand dollars ($3,000) per violation; otherwise, the customer may recover a civil penalty of up to five hundred dollars ($500) per violation for a violation of Section 1798.83.

(e)    Any business that violates, proposes to violate, or has violated this title may be enjoined.

102.    As a result of Yahoo's violation of Cal. Civ. Code §1798.82, California Class members incurred economic damages relating to, inter alia, expenses for credit monitoring and identity theft protection.

103.    Plaintiff and the California Class members seek all remedies available under Cal. Civ. Code §1798.84, including, but not limited to: (a) damages suffered by California Class members as alleged above; (b) statutory damages for Yahoo's willful, intentional, and/or reckless violation of Cal. Civ. Code §1798.83; and (c) equitable relief.

104.    Plaintiff and the California Class also seek reasonable attorneys' fees and costs under Cal. Civ. Code §1798.84(g).

### SEVENTH CAUSE OF ACTION

#### Declaratory Relief

105.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff brings this claim on behalf of herself and all Class members.

106.    There is an active case and controversy among Plaintiff on the one hand, and Yahoo on the other.

107.    Pursuant to 28 U.S.C. §2201, Plaintiff seeks a declaration as to the following:

(a)    That, to the extent Plaintiff's claims herein are covered by Yahoo's Terms of Service, Section 20 of Yahoo's Terms of Service, purporting to limit Yahoo's liability for, inter alia,

CLASS ACTION COMPLAINT
CASE NO.

1   "unauthorized access to . . . your data," is unenforceable because it is against public policy and both

2   procedurally and substantive unconscionable; and

3       (b)     That, to the extent Plaintiff' claims herein are covered by Yahoo's Terms of Service,

4   Section 20 of Yahoo's Terms of Service is unenforceable because it violates Cal. Civ. Code §1668

5   and/or Cal. Com. Code §2719.

6       108.    Plaintiff is in doubt as to whether Yahoo's Terms of Service apply to her's and the Class

7   members' claims and whether, if so, the limitation of liability clause therein is lawful and enforceable

8   under California law.

9       109.    There is a bona fide dispute between the parties hereto, and Plaintiff has and does raise

10  justiciable issues as to the existence or non-existence of his rights, powers, obligations, and legal

11  relations with Yahoo by virtue of the Terms of Service, this complaint, and the applicable statutes and

12  rules of this state.

13      110.    Plaintiff and Class members are in doubt as to their rights, powers, obligations, and legal

14  relations and there is an actual and present need for a declaratory judgment as to the issues set forth

15  herein.

16                          **PRAYER FOR RELIEF**

17      WHEREFORE, Plaintiff Tina Lee, on behalf of herself and the Class and state law classes,

18  respectfully request that this Court enter an Order:

19      A.      That the Court certify this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(1),

20  (b)(2), (b)(3), and (c)(4), and pursuant to Fed. R. Civ. P. 23(g), appoint the named Plaintiff to be the

21  Class representative and her undersigned counsel as Class counsel;

22      B.      That the Court award Plaintiff and the Class appropriate relief, including actual damages,

23  restitution and disgorgement;

24      C.      That the Court award Plaintiff and the Class equitable, injunctive and declaratory relief as

25  maybe appropriate under applicable state laws. Plaintiff, on behalf of the Class, seeks appropriate

26  injunctive relief designed to ensure against the recurrence of a data breach by adopting and

27  implementing best security data practices to safeguard members' Personal Information and that would

28

CLASS ACTION COMPLAINT
CASE NO.

1 | include, without limitation, an order and judgment directing Defendant to: 1) implement policies and
2 | procedures for the securing of data that complies with all legal requirements; 2) encrypt all sensitive
3 | member data; and 3) provide to Plaintiff and Class members appropriate monitoring services, including
4 | credit monitoring, black website surveillance, and public record scanning.

 D.     That the Court award Plaintiff and the Class pre-judgment and post-judgment interest;

 F.     That the Court award Plaintiff and the Class reasonable attorney fees and costs as allowable by law;

 G.     Such additional orders or judgments as maybe necessary to prevent these practices and to restore any interest or any money or property which may have been acquired by means of the violations set forth in this Complaint;

 H.     That the Court award Plaintiff and the Class such other, favorable relief as allowable under law or at equity.

## JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

DATED: November 22, 2016                    **FINKELSTEIN THOMPSON LLP**


                                            By:    /s/ *Rosemary M. Rivas*
                                                   Rosemary M. Rivas

                                            Quentin A. Roberts
                                            1 California Street, Suite 900
                                            San Francisco, California 94111
                                            Telephone: (415) 398-8700
                                            Facsimile: (415) 398-8704

                                            *Counsel for Individual and Representative*
                                            *Plaintiff Tina Yee*

CLASS ACTION COMPLAINT
CASE NO.